Good morning, your honors. Mike Resnahan representing the appellant Jose Magana. We have raised three issues here. I'll go ahead and try to take these in order. The first issue is the question of whether the sentencing commission through its amendment 722 intended to extend the definition of forcible sex offense to offenses against unconscious victims that involved at least in this case arguably involved neither force nor violence. There's a question regarding standard of review. Government has argued that plain error should apply here. We are arguing that this should be de novo review because really it's an issue of law. There is no real dispute about whether the statute should be consistent throughout regarding that. So what we're really looking at is we're taking a stipulated set of facts and we're applying the law to those facts. And so we believe that that's the proper standard of review. So in your view, there's some question about whether the parenthetical addition to the sentence, including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent or coerced. Why doesn't that apply? Well, they did retain or they did include the phrase where consent is not given. I would argue that given the larger backdrop here, and I'm going to talk about that a little bit, that phrase was intended to include that set of individuals that consciously withholds consent rather than a subset of individuals who are unconscious and therefore cannot either give or withhold consent. And support for that, I think to some extent, is a little bit different. It's a little bit different in the context of the Justice and Commission, where it talks about what the commission was trying to accomplish. And I have some of that in front of me, some of the commission's comments in front of me I want to allude to, and these are in the cited in the brief as well. The commission at one point says the application of the amendment therefore would result in an outcome that is contrary to cases excluding crimes in which there may be assent in fact but no legally valid consent from the scope of forcible sex offenses. And then they cite three cases, and all three cases are in that category of assent but no consent. And they, I mean... So what did the facts, what did the undisputed facts show here that was the situation of the victim at the time of the offense? Right. In a nutshell, what was, what my client pled to, or admitted to, is that he and a friend, three people, he, his male friend, and a female were together at a residence. They were all drinking alcohol. The female passed out from alcohol intoxication. My client and his male friend were very And then my client's friend had mouth-to-breast contact on the female, and that's it. And she was unconscious at the time that this occurred. Correct. So there was, certainly there was no conscious consent, there was no conscious assent, and then there was no, obviously no objection either because she was unconscious. Do we know, the only thing that we're sure that your client did was to help undress the female? I think that that's beyond dispute. I don't think that there's any dispute over that at all. And there's nothing beyond that? That's correct. And so... The conviction was for attempted. It was for attempted, right. But the record is clear that he actually... I don't think it does here, because he did admit to actually having that contact, or his friend having that contact. In any event, I think because of the manner in which the commission went about describing why it caused this amendment to come about, citing assent but no consent examples, and the mere, I mean sort of the logical fact that an unconscious person cannot assent or consent to anything, nor can an unconscious person be forced to do anything in any sense. I think that the argument can be made that when the commission expanded the definition of what is a forcible sex offense, it did not intend to address that scenario. It certainly didn't do so expressly. What's charged here is illegal reentry? Correct. Right. And as a result of the characterization of the prior, he was given 16 levels. And that resulted in a fairly long sentence. And this argument ties in with the third argument, which is the argument that the court should have, notwithstanding the court's conclusion that this was a forcible sex offense, which I disagree with, but moving on from there, the court should have looked at the actual character of the offense and awarded a downward variance to reflect the fact that this wasn't the kind of offense contemplated within the, you know, the mainstream offenses contemplated by that guideline. This wasn't the kind of offense that involved violence, really. It's certainly a violation, certainly an affront to this young lady, a serious affront, but not violence per se, not force per se, and not injury per se other than perhaps some psychic injury, but not the kind of offense that should have drawn a 16-level increase. And that was really, if one looks at the reasons given by the court for imposing the sentence, that was really the main reason the judge rejected the cultural assimilation argument and really the main reason why he imposed the sentence he imposed. I think the judge did abuse his discretion here. I think the judge was unreasonable in viewing that prior, the way he viewed it, and assigning the 16 levels. Very quickly, on the second issue, that involving the 3E1.1 third-level acceptance issue, this issue is probably coming up to this court several times a week. I don't think it's gone on. It's been foreclosed, isn't it, by our opinion? Was it Johnson, the United States? Is that the right case? Yes, Johnson is one. There's a string of them. There are two or three in this circuit. I'm here to ask the court to reconsider. This is eventually probably going to have to be resolved either by the sentencing commission going back and rewording this or the Supreme Court ruling on it, because now we have a split in the circuits. We have the second and fourth circuits going the other way, and we have the ninth going this way. And honestly, if one simply reads the section and 3E1.1B and applies simple rules of grammar, I do not know how it can be read any other way than to say that if the defendant enters a plea early enough to cause the government to not have to expend resources to prepare for trial, not appeal, not other things but trial, then he is entitled under this rule or this guideline to that third additional level. So one would have to actually change the grammar in order for it to work the way the government wants it to work. I certainly appreciate your argument, but we're a three-judge panel. We're bound by what a prior three-judge panel... Well, I'm here to make the record, I suppose, and... Are you asking us to recommend a bank rehearing? I probably will at some point, yes. Because it hasn't gone en banc yet. In any event, I guess I'm out of time, so I thank you very much. Okay. The government. May it please the Court. Erica Sager on behalf of the District of Arizona. The District Court in this case did not commit plain error when it imposed a 16-level sentencing enhancement based on the prior conviction for attempted sexual abuse in the first degree. I'd like to address first the standard of review that should apply. And in this case, we believe the standard review is plain error. The defendant in this case did not object to any sentencing enhancement being applied at the trial at the District Court level. In addition, the District Court adopted the findings and recommendation of probation and concurred with their assessment absent an objection, so the District Court was not provided the opportunity to conduct a meaningful review of the party's positions with regard to that, nor to provide a reasoned decision. And the government does suffer prejudice because we, although did submit some documents to the court, had there been an objection, we would have had the opportunity to obtain additional documentation to submit to the court in order to support the 16-level enhancement. The defendant's conviction in this case clearly falls within the category of forcible sex offense as the expanded definition in 2L1.2. The specific statute under which the defendant was convicted is an attempted sexual abuse in the first degree, which by statute requires that the sexual abuse either occur by forcible compulsion while the other person is incapable of consent by reason of being physically helpless, or when the other person's victim is under the age of 11. And all three of those statutes would fall under the broadening of the definition of forcible sex offense, because all of them involve a vulnerable victim, i.e., someone who is either forced or incapable of consent, or is consent to the conduct is not given. So it seems very clear from the government's perspective that the New York statute is categorically a forcible sex offense. With regard to the abuse of discretion standard that the court has to review with whether or not the sentence was reasonable, I would note that the district court in this case did consider all of the 3553A factors, in addition to specifically talking about the defendant's request for both a variance and a departure for cultural assimilation. The district court specifically went through the different 3553A factors in addition to the seven factors that the sentencing guidelines have discussed as necessary for a departure for cultural assimilation. And the reason that he came back to this country was to try to get back to his wife and two children. Is that correct? Your Honor, there's somewhat of a conflict in the record with regard to that. In the defendant's sentencing memorandum and based on the comments that the defendant made at sentencing, he was trying to come back to the country for the birth of his youngest child. However, you look at what he told the probation officer in the pre-sentence report interview, he returned to the country both to be with his family and to work, and he intended to remain in the United States permanently. And then at the sentencing hearing, he said he intended to go back to Mexico. So there is somewhat of a conflict, but clearly at least part of his motivation for returning was to be with his family. Who was the district judge? Judge Linda Reed. She was a visiting judge. She was, Your Honor. From Iowa. Correct. Is the sentence reasonable under these circumstances? It would seem that when he has a family here that he should be supporting, it's difficult to think that this length of sentence is a wise one. We probably have a woman who will be on welfare with two children. It would seem that giving him an opportunity to take his family back to Mexico and to leave would serve the interests of both his family and our interests here in the United States. Well, Your Honor, I have two responses to that. The first is with regard to the reasonableness, the test that the court uses to determine whether a sentence is reasonable is whether the record as a whole reflects a rational and meaningful consideration of the factors enumerated in 18 U.S.C. 3553A. And based on the record before the court, the district court did consider all of those 3553A factors. With regard to the factual argument with regard to the family, you know, remaining in the United States, I would note that both the pre-sentence report and the defendant's sentencing memorandum and comments in court indicate that the wife and children intend on going back to Mexico to reside with the defendant when he's released from custody and would not be remaining in the United States. Is it the practice of the district, with the U.S. Attorney's Office in the District of Arizona, in situations where the defendant pleads straight up and doesn't agree to waive appeal rights, to not move for the extra point? Your Honor, under the court's holdings in the... I understand what the court's holdings are. My question was, is that the practice of the United States Attorney's Office in the District of Arizona? Your Honor, each case is reviewed by the U.S. Attorney's Office. What was so serious about this case that the U.S. Attorney's Office would not give him the one extra point for early plea? Well, Your Honor, the first part I would like to, in addressing that question, the United States Attorney's Office actually in this case did take efforts to prepare for trial. If you look through the timeline on the record, we actually filed two substantive motions and a witness list with regard to this case because the defendant had twice continued the plea deadline and the trial date and had not given an indication that he was, in fact, going to be entering a plea of guilty. And so because his notification to the United States Attorney's Office was not timely, there were steps taken to prepare for trial in this case. Additionally, under these courts' holdings in both Johnson and Medina Beltran, the United States, as long as their withholding of that third level is rationally related to a legitimate government interest. I just don't understand the government's position. I really don't. Your Honor, in this case, the government did take efforts to prepare for trial. What did you do? I mean, how much time would you really spend? Your Honor, I was not the attorney that filed those motions, but I can say that, you know, once those – in order to compile a witness list, obviously there's some substantial trial preparation that goes into that to determine which witnesses would need to be called at a trial, you know, to conduct witness interviews and such. When I read this, I thought the reason why the government didn't move – the reason it was given was because he didn't waive his right to appeal. Your Honor, that was definitely one of the reasons why, but I would – And that argument is – or that position is permitted under the Ninth Circuit case law? I understand that position, that we have a case that says that. So what? And, Your Honor, in addition, there was trial preparation work that was done in this case with regard to the timeliness of the defendant's entry of a plea of guilty in this case, or notification of entry of a plea of guilty. If we were to send this case to our mediation staff, do you think the government would soften its position? Your Honor, I think a sentence within the guideline range is appropriate in this case, just as the district court held. I believe that when you consider the 3553A factors and the defendant's request for both departure and variance under cultural assimilation, a sentence at the low end of the guidelines is reasonable, given the totality of the circumstances surrounding this case. In conclusion, I believe that the district court did not err in imposing a 16-level enhancement for the defendant's prior conviction, as it clearly qualifies as a forcible sex offense and, therefore, a crime of violence. What happened here is so minimal. Two drunk fellows undress this woman and make some sexual move, but it seems like it's pretty minimal. And so what we're doing is probably ruining this fellow's life and his marriage and his right to be with his children. Your Honor, the statute itself that the defendant was convicted under does not specify what the conduct that the defendant actually committed. I understand that, and you understand that. But a little humanity sometimes is called for. I believe that the district court's decisions in this case should be upheld and this panel should affirm the sentence as provided for by the district court. Thank you. Counsel, I think you've used all your time. Thank you. The matter is submitted.
judges: Fletcher, Noonan, Paez